IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| DANIEL M. MALONE, ) | CASE NO. BK10-81962-TJM |
| ) | A12-8002-TLS |
| Debtor(s). ) | |
| RICHARD D. MYERS, Chapter 7 Trustee ) | |
| of the Daniel M. Malone bankruptcy estate, ) | CHAPTER 7 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| JEANNE MALONE, ) | |
| ) | |
| Defendant. ) | |

## FINDINGS and RECOMMENDATIONS

Trial was held in Omaha, Nebraska, on September 10, 2013, on the bankruptcy trustee's second amended complaint alleging fraudulent and preferential transfers. J.P. Sam King appeared for the Chapter 7 trustee, and David A. Domina appeared for the defendant.

The Chapter 7 bankruptcy trustee is challenging certain transfers made by the debtor as fraudulent and preferential. He seeks to avoid the transfers and bring assets back into the bankruptcy estate. The case was tried on September 10, 2013, with testimony from four witnesses and numerous pieces of documentary evidence. The parties submitted post-trial briefs and the matter is now ready to be decided. The parties have considered the bankruptcy court's authority to enter a final judgment in light of the writ of certiorari granted by the United States Supreme Court in *In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553 (9th Cir. 2012), and have requested that findings and recommendations be issued to the federal district court for entry of final judgment by an Article III judge. Accordingly, I will not enter a final order in this matter, but my findings of fact and proposed conclusions of law will be forwarded to the district court for issuance of the appropriate judgment.

In a nutshell, the context of the case is this: Daniel Malone owned an interest in, and was the managing member of, a limited liability company that owned and operated an assisted-living facility in Omaha, Nebraska. Mr. Malone and his wife, who is the defendant in this case, borrowed $250,000.00 which was used to purchase a 25% membership interest in the limited liability company in Mrs. Malone's name. The promissory note was subsequently paid off according to its terms. Mr. Malone filed a Chapter 7 bankruptcy petition in 2010. The trustee alleges the parties engaged in fraudulent and preferential transfers under state and bankruptcy law to protect assets from creditors. The defendant denies that any fraudulent or preferential transfers occurred.

The following facts have been established:

1. The debtor, Daniel Malone, and the defendant, Jeanne Malone, married on August 8, 1970, and are the parents of nine children. One of the children has been developmentally disabled since his birth. He resides with Mr. and Mrs. Malone at their home and requires constant care. Mrs. Malone is his permanent and primary caregiver.

2. Since 1982, Mr. Malone has worked in the real estate business. Until 2005, Mrs. Malone remained at home to take care of their household and children.

3. Mrs. Malone is the sole owner of the family's residence.

4. Investment Property Resources, Inc. ("IPR") is a commercial real estate brokerage business created by Mr. Malone in 1976. Since that time, Mr. and Mrs. Malone have each owned 50% of the company. They have also been the officers and directors of the company.

5. A.G. Ventures, LLC is a Nebraska limited liability company. In 2005, Mr. Malone owned an 80% interest in the company. He personally guaranteed the debts of the company.

6. Between 2005 and 2009, Mr. Malone earned about $250,000.00 each year from his commercial real estate business.

7. Mrs. Malone worked for Angel Guardians, Inc., a nonprofit organization designed to provide services and assistance to developmentally disabled people, between 2005 and 2010. She was initially a volunteer, and then earned a small salary.

8. At all relevant times stated in the amended complaint, Mr. Malone possessed an ownership interest in California Housing, L.L.C., now known as Via Christe, LLC.

9. Mr. Malone was California Housing/Via Christe's managing member from its formation in 2003 until November 2010. Despite the appointment of a new managing member at that time, Mr. Malone continued to participate in the entity's management.

10. Prior to Mrs. Malone's investment, California Housing had lost funding from its bank in the middle of the construction of its assisted living facility. It secured funding from a local bank, contingent upon raising an additional $2,000,000.00 in capital from private investors.

11. On June 21, 2005, Mrs. Malone signed an agreement with California Housing, agreeing to pay $250,000.00 in exchange for a 25% interest in California Housing. Paragraph 8 of the agreement specifically provides:

> G Malone agrees to contribute the sum of $250,000.00 as a capital contribution to California Housing L.L.C. For this sum, Malone shall be granted a 25% membership interest in California Housing based upon such consideration.

The "G Malone" in this statement refers to Mrs. Malone.

12. On. May 27, 2005, Mr. and Mrs. Malone signed a promissory note whereby they, along with two entities in which Mr. Malone owned an interest, promised to pay $250,000.00 to Rockbrook Village, Inc., Defined Benefit Plan, Russell S. Daub, Trustee ("Rockbrook").

13. The terms of the note included a due date of April 25, 2009, 9% interest, and monthly payments of $1,875.00 for the first year and $3,166.89 thereafter.

14. In exchange for the note, Rockbrook loaned $250,000.00 to Mr. and Mrs. Malone. The funds were then transferred by Mr. and Mrs. Malone to California Housing.

15. Paragraph 12 of the 2005 note, concerning collateral, states that the indebtedness created by the note was secured by a second deed of trust recorded on property owned by Maple Office Partners, LLC.

16. Mr. Malone owned an interest in Maple Office Partners, LLC along with Robert Brau and James Keiter.

17. In December 2005, California Housing, L.L.C. changed its name to Via Christe, LLC.

18. Via Christe issued a K-1 tax document to Mrs. Malone in 2005 which stated that the $250,000.00 contributed by her to Via Christe was a "capital contribution."

19. Shortly before January 2009, the Rockbrook note was in default and the lender demanded full payment.

20. In January 2009, Via Christe obtained a loan from an Omaha church in the amount of $250,000.00. Via Christe then paid at least $200,000.00 to Mr. and Mrs. Malone.

21. The Rockbrook note was paid off by a payment of $200,000.00 on January 30, 2009, and a payment of $54,542.07 on July 27, 2009.

22. Mrs. Malone did not participate in the arrangements to obtain the note or to pay it off.

23. Mr. Malone filed the underlying Chapter 7 bankruptcy petition on July 7, 2010.

24. Mr. Malone's bankruptcy schedules list an undisputed claim of $24,000.00 held by the IRS for unpaid trust fund payroll taxes for IPR for all quarters in 2005, as well as an undisputed claim of $100,802.63 held by the IRS for unpaid trust fund payroll taxes for A.G. Ventures for all quarters in 2005.

25. Dennis Walker filed a lawsuit against Mr. Malone in 2003. A judgment in excess of $600,000.00 was entered against Mr. Malone and another person in December 2005.

26. In 2004, John Moylan loaned Mr. Malone $280,000.00. Payments of $215,000.00 have been made on the loan, leaving a balance due of $65,000.00. This debt was listed as unsecured in Mr. Malone's bankruptcy schedules.

27. In March 2007, Charles Hill sued Mr. Malone and obtained a judgment in the amount of $210,192.21 against him in June 2008.

28. On August 15, 2008, Bank of Nebraska sued Mr. Malone. In his bankruptcy schedules, Mr. Malone listed Bank of Nebraska as having an undisputed, unsecured claim in the amount of $140,000.00.

29. In December 2008, United General Title Insurance Company sued Mr. Malone. In his bankruptcy schedules, Mr. Malone listed United General Title Insurance Company as having an undisputed, unsecured claim in the amount of $588,671.80.

30. On December 2, 2011, Mr. Malone testified that a majority of the payments on the Rockbrook note were made from the funds in Mr. and Mrs. Malone's joint bank account.

31. Mr. Malone subsequently testified at trial that most of the payments on the Rockbrook note likely came from IPR's account and were credited against his income at the company.

32. In December 2005, separately from the Rockbrook transaction, Mrs. Malone guaranteed Via Christe's loan from First Savings Bank, and she executed a deed of trust on Via Christe's property to the bank in her capacity as a member of Via Christe.

I. Fraudulent Transfer Claims.

The Bankruptcy Code provides the trustee with authority to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim[.]" 11 U.S.C. § 544(b)(1). "Applicable law" in this instance is the Nebraska Uniform Fraudulent Transfer Act ("NUFTA"), specifically Neb. Rev. Stat. §§ 36-705(a) and 36-706.

The defendant here contends that the statute of limitations bars the trustee's fraudulent transfer claims. Actions under Neb. Rev. Stat. § 36-705(a)(1) are to be brought within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant. Actions under Neb. Rev. Stat. §§ 36-705(a)(2) or 36-706 are to be brought within four years after the transfer was made or the obligation was incurred. Neb. Rev. Stat. § 36-710.

This adversary proceeding was timely filed on January 13, 2012, within the two-year limitations period of § 546(a). That section of the Bankruptcy Code, when read in conjunction with § 544(b), permits the trustee to pursue claims for which the statute of limitations had not expired as

-4-

of the date the bankruptcy petition was filed. Here, Mr. Malone's bankruptcy petition was filed on July 7, 2010, so the trustee may attempt to recover under NUFTA allegedly fraudulent transfers made on or after July 7, 2006. *See In re Petters Co.*, 494 B.R. 413, 440-41 (Bankr. D. Minn. 2013) (holding that the interaction of § 544(b), § 546(a), and state fraudulent transfer law "clearly contemplates a reachback for the estate's benefit, to transfers occurring before the bankruptcy filing, within the full base period under the state law that would apply to such a creditor. . . . [T]hat base period begins on the date of the filing of the bankruptcy petition – the date as of which its allowability is to be determined – and runs back. Had the bankruptcy case not intervened, that creditor could have sued on that date in a nonbankruptcy forum to set aside any transfer that took place within the full limitations period under applicable bankruptcy law. As the inheritor of all the same right of suit, a trustee may do so as well.").

That four-year period covers approximately $57,000.00 in loan payments made between July 7, 2006, and July 1, 2008, as well as approximately $254,000.00 in payments made in 2009. In addition, the trustee invokes the "continuing tort doctrine," arguing that Mr. and Mrs. Malone engaged in a continuous and cumulative pattern of tortious conduct beginning with the original fraudulent act of transferring the Via Christe interest to Mrs. Malone.

The "continuing tort doctrine" holds that when an individual is subject to a continuing, cumulative pattern of tortious conduct, capable of being terminated and involving continuing or repeated injury, the statute of limitations does not run until the date of the last injury or cessation of the wrongful action. *Alston v. Hormel Foods Corp.*, 730 N.W.2d 376, 381 (Neb. 2007). When a tort is continuing, although the initial tortious act may have occurred longer than the statutory period prior to the filing of an action, an action will not be barred if it can be based upon the continuance of that tort within that period. *Id.* at 382. The doctrine is not intended to stretch statutes of limitation beyond recognition. Instead, its purpose "is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." *Roemmich v. Eagle Eye Dev., LLC*, 526 F.3d 343, 350 (8th Cir. 2008) (quoting *Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 801 (7th Cir.2008)). The court cited as a "paradigmatic example" a series of incidents of workplace sexual harassment that may begin with a trivial instance of offensiveness but those trivial instances accumulate and reach the level of actionable harassment, rendering the entire series actionable. *Id.* The doctrine does not apply to "transactions that are 'separate, distinct, and could have been challenged by a plaintiff' when they occurred." *Id.* (quoting *Hope v. Klabal*, 457 F.3d 784, 793 (8th Cir. 2006)). For that reason, these Eighth Circuit cases did not apply the doctrine to situations where the plaintiff alleged breaches of fiduciary duties and the duty of good faith owed to him by other members and shareholders of a limited liability company (*Roemmich*) or where the plaintiff alleged, among other causes of action, fraud, breach of contract, negligent misrepresentation and conversion against sellers with whom she had dealt in a series of art purchases (*Hope*). In the *Hope* case, the court suggested the plaintiff should have been aware of the alleged fraud when each transaction occurred and could have pursued the allegations in a more timely manner. In a case involving an allegedly prohibited interest rate on mortgage loans, the court said the borrowers should have been aware of the violation at the time of the loan origination, not with each payment, so it refused to apply the doctrine. *Wong v. Bann-Cor Mortg.*, 918 F. Supp. 2d 941 (W.D. Mo. 2013).

By the time Mr. and Mrs. Malone executed the promissory note and began making payments on it, a number of creditors held judgments against Mr. Malone for unpaid debts and could have challenged the allegedly fraudulent transfers in a timely fashion. Similar to the cases cited above, this case involved distinct transfers, rather than a series of events with an accumulative fraudulent effect. The initial transfer of the Via Christe shares to Mrs. Malone, as well as each subsequent payment, was a discrete event. The initial transfer would have qualified as a fraudulent transfer, but is outside the statutory NUFTA recovery period and the continuing tort doctrine is not applicable.

In an action seeking to set aside a fraudulent transfer, the burden of proof is on a creditor (trustee in a bankruptcy case) to prove, by clear and convincing evidence, that fraud existed in a questioned transaction. *Eli's, Inc. v. Lemen*, 591 N.W.2d 543, 555 (Neb. 1999) (citing *Dillon Tire, Inc. v. Fifer*, 589 N.W.2d 137 (Neb. 1999)). Clear and convincing evidence is "that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved." *Id.* at 555-56 (quoting *Dillon Tire*, 589 N.W.2d at 142).

NUFTA encompass alternative prongs of liability – either proof of actual intent to hinder, delay, or defraud creditors, or proof of a transfer for less than reasonably equivalent value made while the debtor was insolvent or which caused the debtor to become insolvent. Neb. Rev. Stat. § 36-705(a). "Transfer" means "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Section 36-702(12). A transfer by a debtor is fraudulent as to present and future creditors if the debtor made the transfer:

1. with actual intent to hinder, delay, or defraud any creditor, or
2. without receiving a reasonably equivalent value in exchange for the transfer, and the debtor:
    (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation; or
    (ii) intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Neb. Rev. Stat. § 36-705(a).

The statute lists 11 "badges of fraud" that may be considered when determining actual intent under § 36-705(a)(1). Those factors are:

1. whether the transfer was to an insider;
2. whether the debtor retained possession or control of the property transferred after the transfer;
3. whether the transfer was disclosed or concealed;
4. whether before the transfer was made, the debtor had been sued or threatened with suit;
5. whether the transfer was of substantially all the debtor's assets;
6. whether the debtor absconded;

7. whether the debtor removed or concealed assets;
8. whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
9. whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
10. whether the transfer occurred shortly before or shortly after a substantial debt was incurred; and
11. whether the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Neb. Rev. Stat. § 36-705(b).

An insider includes a relative of the debtor, § 36-702(7)(i)(A), and a relative is defined as a spouse or an individual related to the debtor or the spouse by consanguinity within the third degree as determined by common law. Section 36-702(11). As the debtor's spouse, the defendant is an insider.

After applying the law to the facts, it is clear that the challenged payments were fraudulent. Mrs. Malone obtained the benefit of the loan but pledged no assets toward repaying it. Despite her testimony that she believed her house was used as collateral for the Rockbrook loan, it was not. No marital assets were pledged as collateral. The security given for the note was a second deed of trust on real property that belonged only to Mr. Malone and some business partners, not to Mrs. Malone. The proceeds were then used to purchase an asset solely for Mrs. Malone, yet the note was repaid from Mr. Malone's income. While IPR is jointly owned by Mr. and Mrs. Malone, the evidence indicates (and Mr. Malone acknowledged) the money withdrawn from IPR's account to make the Rockbrook payments was accounted for as part of Mr. Malone's income. Mrs. Malone would not have had an ownership interest in that income prior to the time it was distributed. In other words, the debtor used his own funds to make payments on a loan that solely benefitted Mrs. Malone.

The weight of the evidence indicates that Mr. Malone arranged for the Via Christe interest to be issued in Mrs. Malone's name to protect their assets from his creditors. He and his businesses had suffered financial reversals by that time, with collection lawsuits being filed against him and unpaid employment taxes accruing. Although Mrs. Malone is college-educated and possesses experience and acumen in retail and nonprofit fields, she was not involved in the Rockbrook/Via Christe transaction to any significant extent and primarily relied on what Mr. Malone told her about the arrangement. In addition, she gave conflicting testimony at various times in this lawsuit, stating in her deposition a year ago that the $250,000.00 was a loan to Via Christe, while testifying at trial that she is unfamiliar with business terminology and misspoke when she referred to it as a loan. She now is sure that the funds were not a loan but were for the purchase of stock. The payments were not disclosed, as they should have been, on Mr. Malone's statement of financial affairs filed with his bankruptcy petition. Mr. Malone intended that purchasing an additional interest in Via Christe and putting it in Mrs. Malone's name would provide some protection for the family in the face of creditors' demands. This activity constitutes actual intent to hinder, delay, or defraud creditors.

The final two note payments, totaling $254,542.07, were made with the proceeds of two checks issued to Mr. and Mrs. Malone by Via Christe. The trustee argues that because Mr. Malone provided all of the funds used to purchase the Via Christe interest, the distribution should be attributed to him such that the conclusion could be drawn that he used his own funds to pay for an asset in his wife's name. The defense argues that because the parties are a married couple and Mr. Malone was the primary breadwinner and provider for the family, they shared assets and what's his is hers. That argument does not explain why the family residence and the Via Christe interest are in her name only and are treated as belonging solely to her, rather than as the couple's joint property. It also does not explain why the checks from Via Christe were issued jointly if, as Mrs. Malone argues, they were a distribution on her ownership interest. It does lead to the inference that Mr. Malone engaged in conduct where he intentionally used his business assets to purchase an asset in his wife's name in order to protect it from his creditors, and then used that asset to distribute funds to pay off a loan on which he was liable. Therefore, the final two note payments are avoidable in their entirety.

The finding of actual intent renders unnecessary a discussion of reasonably equivalent value and insolvency under the alternative prong of § 36-705(a)(2). Moreover, the analysis of the trustee's arguments under § 36-706 and § 548 would hinge on whether Mr. Malone was insolvent at the time of or as a result of the transfers. Given the court's finding that the transfers going back four years were made with actual intent, a discussion of § 36-706 and § 548 would not add anything to the trustee's recovery.

The trustee also asserts a fraudulent transfer claim under the Federal Debt Collection Procedures Act:

> § 3304. Transfer fraudulent as to a debt to the United States
> (a) Debt arising before transfer. – Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States which arises before the transfer is made or the obligation is incurred if –
> (1)(A) the debtor makes the transfer or incurs the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and
> (B) the debtor is insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation; or
> (2)(A) the transfer was made to an insider for an antecedent debt, the debtor was insolvent at the time; and
> (B) the insider had reasonable cause to believe that the debtor was insolvent.

28 U.S.C. § 3304(a)(1).

The statute of limitations on such claims is six years after the transfer was made. 28 U.S.C. § 3306(b)(2), so this section would cover the entire scope of the Rockbrook/Via Christe transactions. The trustee is using it to attempt to recover the December 2005 transfer of the 25% interest in Via Christe to Mrs. Malone.

There is divergent authority on whether the trustee has standing to bring such a claim. One recent case from the District of Minnesota held that the FDCPA provides a remedy exclusively for the United States. *Kelley v. College of St. Benedict*, 901 F. Supp. 2d 1123, 1130-31 (D. Minn. 2012) (collecting cases); 28 U.S.C. § 3001(a) (stating "the chapter provides the exclusive civil procedures for the United States (1) to recover a judgment on a debt; or (2) to obtain, before judgment on a claim for a debt, a remedy in connection with such claim."). The *Kelley* case involved a court-appointed receiver, which the court described as "akin to a bankruptcy trustee." The court appointment required the receiver to maximize the estate's assets for the benefit of creditors but did not give him standing to sue on their behalf, because a receiver may act only on behalf of the receivership and cannot bring claims on behalf of third parties. 901 F. Supp. 2d at 1128.

Commentators, however, point out several cases in which courts permit bankruptcy trustees to use the FDCPA to extend the UFTA statute of limitations in cases where the government holds a claim against the estate. 5 *Collier on Bankruptcy* ¶ 548.01(2)(c)(i) (noting that § 544(b) "by its terms would permit the estate representative to use the FDCPA"); *Anderson v. Architectural Glass Constr., Inc. (In re Pfister)*, 2012 WL 1144540 (Bankr. D.S.C. Apr. 4, 2012) (holding that because § 544(b) permits the trustee to avoid any transfer that is voidable under applicable law by a creditor holding an unsecured claim, the FDCPA is "applicable law" and the analysis of § 548 applies); *Sergeant v. OneWest Bank (In re Walter)*, 462 B.R. 698 (Bankr. N.D. Iowa 2011) (stating that because the Bankruptcy Code permits the trustee to use non-bankruptcy law to avoid transfers, and because the FDCPA parallels UFTA, it is appropriate to look to § 548 for guidance).

Assuming for purposes of this discussion that the trustee may use the FDCPA to avoid transfers when the United States holds an unsecured claim, as the IRS does in this case, the trustee has not proved up the necessary elements. While the proceeds of a loan for which Mrs. Malone had no assets at stake were used to purchase an asset solely in her name with the intention of shielding it from Mr. Malone's creditors, the evidence does not support a finding that Mr. Malone was insolvent or became insolvent when this transfer was made. At most, he was involved in litigation with Dennis Walker which resulted in a $600,000.00 judgment against him and another defendant, although it is unclear whether the judgment had been entered at the time of the transfer, and two of his companies were not paying their trust fund taxes in a timely manner. There is no evidence these financial setbacks rendered him insolvent at the time.

II. Preferential Transfer Claims.

The trustee also asserts a preference claim against Mrs. Malone for the final $54,000.00 payment on the Rockbrook note. The Eighth Circuit Court of Appeals has addressed the parameters of the avoidance of preferential transfers:

> "Under the Bankruptcy Code's preference avoidance section, 11 U.S.C. § 547, the trustee is permitted to recover, with certain exceptions, transfers of property made by the debtor within 90 days before the date the bankruptcy petition was filed." *Barnhill v. Johnson*, 503 U.S. 393, 394, 112 S. Ct. 1386, 118 L. Ed. 2d 39 (1992). "This rule 'is intended to discourage creditors from racing to dismember a debtor sliding into bankruptcy and to promote equality of distribution to creditors in bankruptcy.'" *Lindquist v. Dorholt (In re Dorholt, Inc.)*, 224 F.3d 871, 873 (8th Cir. 2000) (quoting *Jones Truck Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund (In re Jones Truck Lines, Inc.)*, 130 F.3d 323, 326 (8th Cir. 1997)).
>
> "Title 11 U.S.C. § 547(b) requires that in order for a transfer to be subject to avoidance as a preference, (1) there must be a transfer of an interest of the debtor in property, (2) on account of an antecedent debt, (3) to or for the benefit of a creditor, (4) made while the debtor was insolvent, (5) within 90 days prior to the commencement of the bankruptcy case, (6) that left the creditor better off than it would have been if the transfer had not been made and the creditor asserted its claim in a Chapter 7 liquidation." *Buckley v. Jeld-Wen, Inc. (In re Interior Wood Prods. Co.)*, 986 F.2d 228, 230 (8th Cir. 1993). The trustee must establish each of these elements by a preponderance of the evidence. *Stingley v. AlliedSignal, Inc. (In re Libby Int'l, Inc.)*, 247 B.R. 463, 466 (8th Cir. B.A.P. 2000).

*Wells Fargo Home Mortgage, Inc. v. Lindquist*, 592 F.3d 838, 842 (8th Cir. 2010).

Because the alleged preferential transfer here was to Mrs. Malone, an insider, the trustee can recover transfers made up to one year before the petition date. Section 547(b)(4)(B). As noted above, the final payment on the Rockbrook note occurred with a payment of $54,542.07 on July 27, 2009, and Mr. Malone filed the underlying Chapter 7 bankruptcy petition on July 7, 2010.

As discussed above, the evidence indicates the proceeds used to make this payment were attributable to the debtor. They were transferred to Rockbrook in payment of an antecedent debt incurred by Mr. and Mrs. Malone. The debtor testified that he likely was insolvent at the time the transfer was made. The transfer protected Mrs. Malone from liability on the debt. Accordingly, the elements of a preference have been met.

### III. Recovery.

Under §§ 550 and 551, the trustee may recover for the estate either the property transferred or its value, so, for the reasons stated herein, the trustee is entitled to the value of the payments made between July 7, 2006, and the end of 2008 and those made in 2009.

### IV. Conclusion.

I respectfully recommend to the United States District Court for the District of Nebraska that it enter final judgment in favor of the plaintiff, finding (1) the note payments made between July 7, 2006, and July 27, 2009, were fraudulent transfers; (2) the purchase of the 25% interest in Via

Christe in the defendant's name was outside any applicable statute of limitations and therefore, is not recoverable as a fraudulent transfer; and (3) the July 27, 2009, note payment was also a preferential transfer. As these transfers are voidable, the judgment should provide for payment to the trustee of the value of those note payments.

        DATED:  November 26, 2013.

                              RESPECTFULLY SUBMITTED,

                              /s/ Thomas L. Saladino
                              Chief Judge

Notice given by the Court to:
        *J.P. Sam King
        David A. Domina
        U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.