IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RICHARD D. MYERS, Chapter 7 Trustee of the Daniel M. Malone bankruptcy estate,<br><br>Plaintiff,<br><br>vs.<br><br>JEANNE MALONE,<br><br>Defendant. | 8:13-CV-353<br><br>MEMORANDUM AND ORDER |

  This matter is before the Court on the findings and recommendations (filing 1) of the United States Bankruptcy Judge finding that certain transfers were fraudulent or preferential and recommending that those transfers be set aside and judgment entered in favor of the plaintiff. The Court will adopt the findings and recommendations of the bankruptcy judge.[1]

  The Court's responsibility, before entering a final order or judgment, is to consider the bankruptcy's judge's proposed findings and conclusions and review, de novo, those matters to which any party has timely and specifically objected. 28 U.S.C. § 157(5)(c)(1); *Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2174 (2014). The Court has done so, and agrees with the findings and conclusions of the bankruptcy judge, for the reasons explained by the bankruptcy judge. For the sake of completeness the Court will, however, more specifically address the defendant's three objections to the bankruptcy judge's findings of fact, and two of her objections to the bankruptcy judge's conclusions of law.

FINDINGS OF FACT

  The defendant takes issue with three particular findings of fact. First, she questions the finding that "[d]espite the appointment of a new managing member [in November 2010], Mr. Malone continued to participate in [Via Christe's] management." Filing 1 at 2. The defendant argues, "Mr. Malone still had a membership interest in Via Christe in November 2010, and it was natural that he would continue to participate in management decisions. He was not the managing member after November 2010." Filing 9 at 2.

---

[1] Because the bankruptcy judge's findings and recommendations are comprehensive, the Court will not restate them here. The Court will assume the reader's familiarity with them.

The Court finds no merit to this objection for three reasons. First, the defendant does not explain why it matters. The transfers set aside here took place during or before 2009. Second, the Court agrees with the bankruptcy judge's assessment of the evidence—to the extent that the defendant's objection relies on Mr. Malone's testimony, the Court does not find his testimony particularly credible. And finally, the defendant's objection, on its face, does not even disagree with the bankruptcy judge's finding. The defendant implicitly admits that Mr. Malone, even after November 2010, "continue[d] to participate in management decisions[,]" and that is all that the bankruptcy judge found.

Next, the bankruptcy judge found that "In January 2009, Via Christe obtained a loan from an Omaha church in the amount of $250,000.00. Via Christe then paid at least $200,000.00 to Mr. and Mrs. Malone." Filing 1 at 3. The defendant argues that the funds were actually "earmarked" for payment of the Rockbrook note, so the defendant disagrees with the implication that the defendant and her husband received the money free and clear. Filing 9 at 2. Again, to the extent that the objection relies on the Court finding Mr. Malone's testimony credible, the objection is not well-founded: while the testimony is not "controverted," that does not mean the Court is obliged to accept it at face value. The Court will also address this issue, of whether the funds were actually "earmarked," in a bit more detail below.

Finally, the bankruptcy judge found that the defendant "did not participate in the arrangements to obtain the [Rockbrook] note or to pay it off." Filing 1 at 3. The defendant contends that this finding of fact is irrelevant, but then seems to suggest that it is also factually inaccurate. Filing 9 at 2. Whether a finding of fact is "relevant" is only a meaningful objection if it resulted in an erroneous legal conclusion. But more to the point, the Court, having reviewed the parties' testimony, agrees with the bankruptcy judge that while the defendant may have cooperated with the legal arrangements her husband made, that cooperation was form over substance—the defendant did not, in fact, "participate" in those arrangements so much as she followed instructions.

The defendant's factual objections are not well-taken.

"EARMARK" DOCTRINE

As noted above, the defendant contends that the funds disbursed from Via Christe to the defendant and her husband were, in fact, "earmarked" for repayment of the Rockbrook note. Filing 10 at 12. According to the earmarking doctrine, there is no avoidable transfer of the debtor's property interest when a new lender and a debtor agree to use loaned funds to pay a specified antecedent debt, the agreement's terms are actually performed, and the transaction viewed as a whole does not diminish the debtor's estate. *In re*

*Heitkamp*, 137 F.3d 1087, 1088-89 (8th Cir. 1998). No avoidable transfer is made because the loaned funds never become part of the debtor's property. *Id.* Instead, a new creditor merely steps into the shoes of an old creditor. *Id.*

The Court is unpersuaded that the earmarking doctrine is applicable here. First, it is generally understood that the "new lender" for earmarking purposes should be a third party. *See*, *In re Straightline Invs., Inc.*, 525 F.3d 870, 881-82 (9th Cir. 2008); *In re Flanagan*, 503 F.3d 171, 184 (2d Cir. 2007). The debtor's control of the funds is important. *See Flanagan*, 503 F.3d at 185. The earmarking doctrine could be abused unless a court ascertains that it is the new lender, not the debtor, who earmarks the funds for a particular creditor. *See In re Hartley*, 825 F.2d 1067, 1072 (6th Cir. 1987).

At the time the funds were disbursed from Via Christe to the defendant and her husband, both had ownership interests in Via Christe, and Mr. Malone was still the managing member. The Court finds the earmarking doctrine inapplicable where the "new lender" is effectively under the debtor's control, because the "agreement" to pay the antecedent debt is a sham under those circumstances. *See In re Plechaty*, 201 B.R. 486, 491-93 (Bankr. N.D. Ohio 1996).[2]

### JOINT OWNERSHIP OF FUNDS

The defendant contends, in the alternative, that because the funds issued from Via Christe in 2009 were issued to her and her husband, half should have been regarded as hers. Filing 10 at 14. The defendant correctly states the law: where a conveyance of property is made to two or more persons, and the instrument is silent as to the interest which each is to take, the presumption is that their interests are equal. *In re Roberts' Estate*, 264 N.W.2d 865, 866-67 (Neb. 1978); *Hoover v. Haller*, 21 N.W.2d 450, 454-55 (Neb. 1946); *see Buford v. Dahlke*, 62 N.W.2d 252, 258-59 (Neb. 1954). That rule applies to negotiable instruments. *Hoover*, 21 N.W.2d at 455.

But the presumption is a rebuttable one. *Id.*; *see Roberts*, 264 N.W.2d at 866-68. And it was rebutted here. The money disbursed by Via Christe was purportedly provided to refund a "capital contribution" that had, in fact, been derived from the Rockbrook note: a note that the defendant did not make payments on, and that was secured by property that was not hers. As the bankruptcy judge found, the circumstances suggest "that Mr. Malone

---

[2] The Court also notes that, at least according to Mr. Malone, the money paid from Via Christe to the defendant was satisfaction of a debt Via Christe owed her. Hr'g Tr. at 131. If that was true, then there would be no exchange of one creditor for another—instead, an asset (an account receivable) would have been used to pay a debt. Such a transfer may or may not be avoidable, but it is certainly a transfer. That is not to say that the Court finds Mr. Malone's testimony on this point particularly credible. It is simply to note that the defendant's theory of "earmarking" is inconsistent even with her husband's testimony.

- 3 -

engaged in conduct where he intentionally used his business assets to purchase an asset in his wife's name in order to protect it from his creditors, and then used that asset to distribute funds to pay off a loan on which he was liable." Filing 1 at 8. Those circumstances rebut any presumption of an equality of interest. *Cf. Roberts*, 264 N.W.2d at 867-68.[3]

### REQUEST TO ADDUCE ADDITIONAL EVIDENCE

One final note: the defendant requested, in passing, to be allowed to adduce additional evidence. *E.g.,* filing 10 at 20. The Court may do so, but is not required to. Fed. R. Bankr. P. 9003(d). The defendant has neither advised the Court of what evidence she would adduce, nor explained why such evidence (if any) could not have been presented to the bankruptcy judge in the first instance. Therefore, the Court finds no basis to invite additional evidence, and has not done so. *See, Doe v. Chao*, 306 F.3d 170, 183 (4th Cir. 2002); *United States v. Howell*, 231 F.3d 615, 622-23 (9th Cir. 2000); *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994); *cf., Ridenour v. Boehringer Ingelheim Pharms.*, 679 F.3d 1062, 1067 (8th Cir. 2012); *United States v. Chavez Loya*, 528 F.3d 546, 555 (8th Cir. 2008).

IT IS ORDERED:

1. The findings and recommendations (filing 1) of the United States Bankruptcy Judge are adopted.

2. The note payments made between July 7, 2006 and July 27, 2009 were fraudulent transfers.

3. The purchase of the 25% interest in Via Christe in the defendant's name was outside any applicable statute of limitations and therefore, is not recoverable as a fraudulent transfer.

4. The July 27, 2009, note payment was also a preferential transfer.

---

[3] And, it should be noted, the intent of the disbursement was to pay the Rockbrook note on which both Malones were jointly and severally liable. If the circumstances suggest any sort of intended common ownership, it would seem to be joint tenancy—the proceeds were intended to discharge a joint obligation, so it would make sense for them to be held jointly as well. But as noted above, the stronger inference from the evidence is that this was part of Mr. Malone's shell game, and that there was no intent to create a common interest. *Cf. Roberts*, 264 N.W.2d at 867-68.

5. Judgment will be entered in favor of the plaintiff, and against the defendant, in the total amount of $309,877.19.

6. A separate judgment will be entered.

Dated this 31st day of March, 2015.

                        BY THE COURT:

                        John M. Gerrard
                        United States District Judge